[ PHILADELPHIA, MARCH 29, 1833. ]

Case of the Estate of JACOB GERARD KOCH, deceased.

MANDAMUS.

A decree of distribution protects an administrator from the consequences of a mispayment in rendering obedience to it.

An administrator may appeal from a decree of the Orphans' Court, distributing the balance of an intestate's estate in his hands, although he is not a " party aggrieved," within the words of the 59th section of the Act of Assembly of 29th of *March,* 1832, " relating to Orphans' Courts." He is not a stranger, but a trustee for the parties, beneficially entitled, and the representative of those who may have been aggrieved.

The *quantum* of security to be taken by the Orphans' Court, upon an appeal from a decree of distribution, is a matter for their discretion, and is not necessarily to be measured by the *quantum* of the estate.

THIS case arose upon a rule to show cause why a *mandamus* should not issue directed to the Orphans' court of *Philadelphia* County, to allow an appeal from the decree of distribution made of the estate of *Jacob Gerard Koch,* deceased, and upon the hearing, the case was this : *M. H. Meschert,* and *H. Meschert,* the administrators of *Jacob Gerard Koch,* filed their accounts, and upon their regular confirmation there appeared to be a balance in their hands in money and stock for distribution, of one million forty thousand seven hundred and seven dollars and fifty-two cents. This balance was claimed by the widow of the deceased, and by his collateral relations resident in *Germany, Holland,* and *Italy. Jacob Gerard Koch,* was a naturalized American citizen, formerly a resident of *Philadelphia,* but had for many years previous to his decease, resided at *Paris* in *France,* where he died intestate, in the year 1830. Administration was granted upon his estate to *M. H.* and *H. Meschert,* his brother-in-law and his wife's nephew, in *April,* 1831, by the register of wills of the county of *Philadelphia.* On the 2nd of *October,* 1832, the Orphans' Court appointed three auditors, " to distribute the funds in the hands of the administrators according to law," who on the 6th of *October,* 1832, gave notice in two daily newspapers published

in *Philadelphia,* that they would meet for that purpose on the 17th of *October,* 1832, at four o'clock in the afternoon of that day, at the *Adelphi,* in the city of *Philadelphia,* but no other notice was attempted to be given to the parties interested.　The auditors made their report on the 3rd of *November,* 1832, which was filed on the 17th of *November,* 1832, distributing the funds in the hands of the administrators to the widow and eleven persons, whom they reported to be collateral relations and next of kin of *Jacob Gerard Koch,* some of whom were minors.　Before the auditors, *John Sergeant,* Esquire, appeared as counsel for all the next of kin, and Mrs. *Koch,* the widow, was represented by the administrators, who held her power of attorney.　The administrators appeared in person and by counsel before the auditors.

Upon the filing of the auditors' report, it was confirmed, and the court, being satisfied by the statement of the parties, that there was no probability of any outstanding debt or debts, ordered and decreed distribution to be made to the several persons mentioned therein, according to the report ; the said persons giving bonds with sufficient securities against any debt or debts which might hereafter be discovered, agreeably to the act of assembly ; the amount of the bonds in the whole, to be two hundred thousand dollars; the bond for the widow's moiety to be in one hundred thousand dollars, and those of the next of kin, in their respective portions of one hundred thousand dollars.

On the 21st day of *December,* 1832, *Maria A. Leisman, Francis Binkhorst* and *wife, P. Van Cranenberg* and *wife, G. L. Koch, J. J. Koch,* and *Maria G. Koch,* to whom shares of the fund in the hands of the administrators were reported as next of kin of *Jacob Gerard Koch,* presented their petition to the Orphans' Court, referring to the decree of distribution, and setting forth, " that being aliens, resident in *Europe,* they find it very difficult to obtain the requisite sureties to offer the court, and do not know when it will be in their power to obtain them, but they are willing for the present, and until sureties can be had, to leave in the hands of the administrators a portion of their respective shares, equal in amount to the sum in which they are required to give bonds, that is to say : (setting forth the amounts) the said amounts respectively to remain in the hands of the administrators, until other satisfactory security shall be given by each of your petitioners," and praying the court to decree, that the administrators " should pay to them respectively, or to their agent duly authorised, the amount of their respective shares, save and except the sums mentioned, to remain in the hands of the administrators, for the purposes and upon the terms mentioned."

On the 21st of *December,* 1832, the administrators of *Jacob Gerard Koch* presented a petition to the Orphans' Court, stating, " the death of said *Koch* at *Paris,* out of the jurisdiction of the United States, that his family and next of kin, were believed, at the time of his death, to have been residents without the United States, and still continued to so reside : That no such notice as is contemplated by the 20th sec-

(Case of Jacob Gerard Koch's estate.)

tion of the act of assembly of *Pennsylvania*, passed on the 29th of *March*, 1832, entitled " an act relating to Orphans' Courts," has (so far as the petitioners know) been given to the distributees or creditors of the deceased residing out of this state, or out of the United States, of the settlement of the accounts of the administrators, or of the distribution of the assets or surplusage of the said estate : That by the said act of assembly, three years, after the definitive sentence or decree, are allowed to any person aggrieved by the said decree of the Orphans' Court, to appeal from the same to the Supreme Court of *Pennsylvania:* That the petitioners are but stakeholders, and whilst acting in good faith and for the benefit of all concerned, as such are entitled to receive full security against personal loss; and praying the court, that no person or party heretofore named as entitled to a distributive share of the estate of the said *Jacob Gerard Koch*, in the decree made on the 17th *November*, 1832, should receive the same, unless such person or party should previously give approved security to the administrators, to return to them or their successors, such proportion of the money as may be required to comply with any alteration or modification of the said decree made in consequence of any appeal therefrom made within three years from its date, and that the court would take such other measures in the premises as to the court in justice should seem meet."

These two petitions, upon being presented to the court, were ordered to be filed. On the 9th of *January*, 1833, the court ordered and decreed that the petition of the administrators should be dismissed and overruled; and on the 10th of the same month, granted the prayer of the petition of *Maria A. Leisman*, and others, and decreed that the administrators should pay as therein prayed.

From the decree of distribution as finally made, the administrators offered to appeal to the Supreme Court, made the affidavit required by law, and offered their recognizance, with the same persons as sureties who were sureties in their administration bond, in the sum of two millions one hundred thousand dollars, to prosecute such appeal with effect.

The Orphans' Court, having doubts as to whether the administrators had a right to appeal from a decree of distribution, and the case being one of the first impression, the first since the passage of the act of assembly " relating to Orphans' Courts," and the amount of the estate very considerable, the rule for a *mandamus* was moved for and obtained at the suggestion of the Orphans' Court, in order that the opinion of the Supreme Court might be taken on the question.

*Ingraham*, (with whom was *Tilghman*,) in support of the rule.— It can hardly be supposed, that the provisions of the twentieth and fifty-second sections of the act of 29th of *March*, 1832, (*Pamph. Laws*, 190,) were intended to have no operation, or that the legislature when they provided in a statute, made two weeks previous to

(Case of Jacob Gerard Koch's estate.)

that " relating to Orphans' Courts," that the register should give four weeks notice of the filing of an executors or administrator's account in his office, (act relating to Registers' and Registers' Courts, sect. 30, passed the 15th of *March*, 1832, *Pamph. Laws*, 135,) meant that distributees living in *Europe*, some of whom are minors, should have their rights concluded by a decree, made upon *eleven* days notice, as in this case, in a language which probably not one of them under-stood, and that the administrators, the trustees of the estate for the parties beneficially entitled to it, should not .have the right to inter-fere, because the decree might be ·a protection to them ; though it is not a settled point, that the administrators could set up this decree as an adjudication against persons not named in it. 1 *Stark. on Evid.* 191. edit. 1828. It is indeed difficult to say, what answer administrators could make to a distributee resident in *Holland,* and whose share was not awarded to him, upon proceedings terminated as these have been ; for an administrator as a trustee, is bound to see that a reasonable chance is afforded to all those he is trustee for, to assert their claims, and that their rights should not be cut off by a proceeding which upon such notice as has been given in this case, may well be termed a mockery. The appeal, therefore, is a matter of right to the administrator ; for unless he can appeal for a distri-butee, the estate will be gone without remedy for any one aggrieved, who in a ·distant country may not hear of the proceeding till the three years are gone by.

*Purdon* and *Sergeant* against the rule.—The argument in regard to notice would, if there were any real ground for apprehension, have been properly addressed to the auditors, who upon a proper case made out, would have granted time to give, or would have given themselves a longer notice, but it is too late to take that ground after a decree is made. There is no suggestion here, supported by affi-davit, as it ought to be, that the administrators know of, or have reason to believe that there is any person not included in this distri-bution, whose rights are likely to be prejudiced, and from their connexion with Mr. *Koch's* family, they are able, if such persons existed, to lay such a foundation for tying up this fund for three years by appeal. But in point of fact and law, the administrator is not " a party aggrieved" within the meaning of the fifty-ninth section of " the act relating to Orphans' Courts." This decree will be a com-plete protection to him, and no possible injury can result to him, which can be remedied by allowing him to appeal.

The opinion of the court was delivered by

GIBSON, C. J.—The right of the administrator to appeal is resisted, because he is not, in the language of the act, " a party aggrieved," the decree of distribution being adequate to his protection from the consequences of a mispayment in rendering obedience to it. He is undoubtedly not aggrieved by it in his own person, and the argument

(Case of Jacob Gerard Koch's case.)

is certainly an imposing one ; but in giving the first impression to the construction of this law, we must look beyond its letter and interpret it liberally, in furtherance of convenience and justice.

The administrator is not a stranger, but a trustee for the parties beneficially entitled ; so that it requires but little violence to the letter, and certainly none to the spirit of the law, to treat him in circumstances like the present, as the representative of those who may have been aggrieved. The actual parties we are informed reside in *Germany, Italy* and *Holland,* and if denied the benefit of an appeal by their trustee, would be concluded by a decree from which they have had no opportunity to appeal for themselves. As the case has been stated at the bar, notice was published in this city on the 6th day of *October,* that the auditors would meet to distribute the estate on the seventeenth of the same month ; and on the third of *November* following, distribution was decreed, by which the rights of the claimants would be bound to the value of a million and a quarter of dollars.

It is true, they would have three years from the final decree to appeal for themselves ; but the fund would go in the mean time, into the hands of the distributees, without security to refund it in case of a reversal. It may be that no loss would be incurred by that ; but the actual parties have had neither hearing nor opportunity to obtain it, and it seems reasonable to suffer their trustee to obtain it for them, the funds remaining with him in the mean time under the guarantee of his administration bond. Had they actually appeared or refused to do so, his authority in this respect would have been superseded ; but under the circumstances, it would seem consistent with expediency and justice, to treat him as their representative with power to appeal for all.

As to the *quantum* of the security to be given, it is necessary to say no more, than that it is a matter for the discretion of the Orphans' Court. Yet it may not be improper to intimate, that the security is not necessarily to be measured by the *quantum* of the estate, which is presumed to be already secured in the hands of the administrator. Under the effect of any other rule, the very magnitude of the injury from an erroneous decree might deprive the party of his remedy. The court will take care, that the interests involved will be fully secured as to costs, compensation for delays, or any other matter that may affect the claimants incidentally, and the necessary discretion therefore is wisely *deposited where* a superior knowledge of the circumstances enables the court to graduate the security to the exigencies of the particular case, by requiring what is adequate to the purposes of perfect protection, and no more.

Let the rule be made absolute.

                                        Rule absolute.