# Supreme Court Decisions.

## EXCESSIVE PUBLICATIONS OF SHERIFF'S PROCLAMATION — THE ACT OF APRIL 25, 1898.

THE VINDICATOR PRINTING CO. v. THE STATE OF OHIO.

Decided, May 19, 1903—68 Ohio State, p. 362.

*Number of Publications of Sheriff's Proclamation—Fixed by Statute—
No other County Officer has Authority to Contract for Excess—
County Commissioners can not Allow Claim for Excessive Publi-
cations—Authorized Claim may be Separated from Unauthorized
—Excessive Claim Allowed and Paid—Prior to the Act of April
25, 1898 —Can not be Recovered—Subsequent to said Act may be
Recovered, when.*

1. Where the number of publications of a sheriff's election proclama-
tion or other public notice is fixed by statute, there is no au-
thority in the board of county commissioners, or other county
officer, to contract for publications in excess of the number di-
rected by statute. The board is also without authority to allow a
claim for such excessive publications, and the allowance of such
claim does not bind the county. Nor is authority to adjudicate
and allow such claim given by the fact that with the charge for
unauthorized publications there is, on the same paper, a charge
for a publication which is authorized by statute.

2. But where a claim for such excessive publications has been pre-
sented to the board and allowed, and payment made by the treas-
urer on the warrant of the auditor prior to April 25, 1898, the
prosecuting attorney can not maintain an action, in the absence
of both fraud and mistake of fact, to recover back the money.

3. The act of April 25, 1898 (93 O. L., 408), clothes the prosecuting
attorney with power to recover back money so illegally drawn
from the treasury on and after the date of its passage.

Error to the Circuit Court of Mahoning County.

The action below was brought by the State against The Vin-
dicator Printing Co. in the Court of Common Pleas of Mahoning

to recover public moneys alleged to have been unlawfully drawn from the treasury of that county on the order of the board of county commissioners. It was averred in the first cause of action of the petition, in substance, that in the months of October and November, of the years 1894, 1895, 1896, 1897 and 1898, the defendant published in its newspaper, upon an order of the then sheriff of the county, a public notice styled "An Election Proclamation," which notice the law required should be published not less than fifteen days before each general election, but only in one issue of such newspaper. Instead of being therein printed one time in each year, as required by law, said notice was printed by defendants in excess of the time so authorized, one hundred and twenty-seven times during the years above named. In the year 1894 defendant presented a bill to the board for publishing the said proclamation in which it included a charge for thirty-one publications in excess of what the law allowed to be charged for the same, in all making an excessive charge of $108.50. Similar bills, though varying in amounts, for like excessive publications, were presented in the years 1895, 1896, 1897 and 1898, all which were allowed by the board and warrants drawn on the treasury for the same and paid, the total for all the years named amounting to $556.28.

Another cause of action followed charging excessive and illegal publications, by order of the board, of their report of financial transactions of the years 1895, 1896, 1897 and 1898, together with the report thereon of the examiners appointed examine the same. The law authorized such notice to be published only for one week in two weekly papers of opposite politics, whereas the defendant, without authority of law though directed by the board, published said notice in its weekly and also in its daily edition, the latter of which was illegal and excessive, and for those years the defendant presented bills and was paid by order of the board, $180.50 for such illegal and excessive publications.

Another cause alleged illegal and excessive publications of the report of the examiners appointed by the probate judge of the county the years 1896, 1897 and 1898, to examine and report upon the condition of the treasury, the same being ordered by the board. The law authorized the publication of such report once only in a newspaper. The defendant published the same twice, once in its

weekly and once in its daily. The excessive and unauthorized publications were paid for during those years by allowance by the board in the sum of $103.25.

Another cause alleged excessive publications of divers short notices during the years 1895, 1896, 1897 and 1898, directed by the board and paid by its order, in excess of statutory authority, amounting in all to $20.37.

Defendant interposed a general demurrer to each cause of action, which being overruled, and defendant not desiring to plead further, judgment was rendered for the State in the sum of $860.40, which judgment was on error affirmed by the circuit court, and the company brings error.

*John H. Clarke,* for plaintiff in error.

*J. P. Wilson* and *Gibson & Craver,* for defendant in error.

SPEAR, J.; BURKET, C. J., DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

The correctness of the judgment below on the demurrer rests upon two propositions: One that the allowance by the board of commissioners of the bills for excessive publications was unauthorized and illegal, and the money received thereon was an unlawful drawing of the public moneys; and, second, that the moneys so unlawfully received can be recovered back by suit brought by the prosecuting attorney. If either proposition fails the judgment as rendered can not stand.

1. Was the allowance beyond the power of the board, and for that reason unauthorized? Publication of the sheriff's proclamation is authorized by Section 2977, Revised Statutes. It is to "be inserted in some newspaper published in the county, if any is published therein. This is supplemented by Section 4367, which requires publication in two newspapers of opposite politics, but taken together the meaning is one insertion in each newspaper. Publication of the commissioners' financial report, together with that of the examiners, is provided for by Section 917, Revised Statutes. They are to be published "for one week in two weekly newspapers of opposite politics." Publication of the report of the examiners of the county treasury, etc., appointed by the probate judge, is authorized by Section 1129, Revised Statutes. It is to be pub-

lished "one week in two newspapers of opposite politics, of general circulation in the county." Section 4367 also authorizes the publication of certain notices of general interest to the tax-payers as the auditor, treasurer, probate judge, or commissioners may deem proper in two newspapers of opposite politics. This does not in terms limit the number of publications, but it does not give those officers discretion to fix the number of publications where the number is fixed by other sections. Sections 22b, 798 and 1136-2 fix the number of publications of notices for the sale of bonds, for notices to contractors and for proposals to banks to become depositaries of county funds. In so far as these several sections of the statute provide for the number of publications in excess of the limit fixed are unauthorized. We hold the excessive publications stated in the petition to have been all unauthorized save as to the very small matter of notices to coal dealers, upon which no specific limit seems to have been placed by any section of the statute to which our attention has been called.

The case of *Jones, Aud.,* v. *Commissioners,* 57 Ohio St., 189, which rests upon the provision of the Constitution, Section 5 of Article X, viz., "No money shall be drawn from any county or township treasury except by authority of law," establishes, so far as the matter affects claims of county auditors, the proposition that:

"The board of county commissioners represents the county in respect to its financial affairs only so far as authority is given to it by statute. It may pass upon and adjudicate claims against the county for services in a matter which under the statutes may be the subject of a legal claim against the county. But it is without jurisdiction to entertain or adjudicate claims which in themselves are wholly illegal and of such a nature as not to form the subject of a valid claim for any amount. And an attempt by the board to allow a claim of such character will not bind the county."

This rule, it will be noted, applies to the power of the board to adjudicate and allow the claim. It is supported, also, by *State* v. *Yeatman,* 22 Ohio St., 546. We see no reason for confining the rule to claims of county officers, and if it is to stand as the law of this case it effectually disposes of the first proposition unless jurisdiction was given the board by the fact that, with the unauthorized charges, there was also included a legitimate charge for a

publication authorized by law. The contention of the plaintiff in error is that such was its effect, and that the action of the board of commissioners in passing upon and allowing the bills, part of which is admitted to be legal, binds the county, such allowance having been made in good faith and in the absence of fraud or mistake of fact. This proposition is pressed by an ingenious and persuasive argument by the learned counsel in his brief. But it fails to convince. The publications were separate. They do not necessarily have relation one to the other. Each is an independent service and the right to receive pay for each service depends upon the authority to render and be paid for that service. Neither can aid or weaken the other. The fact that the company had not authority for the excessive publications would afford no reason why it should not be paid for those authorized; so, on the other hand, the fact that it had a just claim to be paid for authorized publications affords no support to those unauthorized. As held in the Jones case, *supra,* the power of the board to act at all does not exist where in law a demand has no legal basis upon which to stand. Counsel's argument we think not sound because it leads to the conclusion that jurisdiction to allow an unauthorized demand may be predicated upon the fact of its being presented on the same paper with a demand which is authorized, notwithstanding the two demands, although of like nature, have no necessary connection with one another. Such construction is entirely inconsistent with the *rationale* of the holding in the Jones case, and would, we think, defeat the manifest purpose of the statute. So far as the allowance of the unauthorized claims is concerned, therefore, we think it clear that the board was without power to make such allowance. It would follow that the payments of such claims were illegal.

It is insisted that the fact, appearing in the petition, that the construction of the statute contended for by plaintiff in error had been placed on the statute by the officials of the county for at least five years, is of great significance. The rule of contemporaneous construction by officers charged with the enforcement of statutes is persuasive, but it can not have forcible application to a situation where the construction of a general statute, having uniform operation throughout the state, appears to have been construed only by the officers of one county.

Counsel lay much stress upon the case of *Shanklin* v. *Commissioners*, 21 Ohio St., 575, and quote from page 583 to this effect:

"It may be laid down as a general rule that the board of county commissioners is clothed with authority to do whatever the corporate or political entity, the county, might, if capable of rational action. * * * It is, in an enlarged sense, the representative and guardian of the county, having the management and control of its financial interests."

It is argued from this that what the board does respecting financial matters affecting the county must conclude the county. It seems hardly worth while to discuss this case at length, but it may be proper to add that the substance of the holding ·in the case is that the board might lawfully take a certificate of deposit in satisfaction of a debt due the county from an embezzling treasurer whose debt to the county they had been otherwise unable to collect. Applying the language quoted to the case the court had in hand, it seems apposite, and, as a general proposition may be accepted as correct, but how can it have application to an issue such as is presented to us? The board had general authority to collect a debt due the county; if it could collect it could settle or compromise. In this sense the board would represent the county. We think, however, that we have an entirely different case, one in which the board did not represent the county, and that it was without power to bind the county by an allowance. It would follow that the payment of such claims, though apparently regular, was without warrant of law.

2. Can the unauthorized payments be recovered back? We have found that the allowances for excessive publications by the board of commissioners were unauthorized and illegal; but the transactions did not stop there. In the ordinary course of business warrants were drawn by the county auditor and paid by the county treasurer. These were not the acts in any sense of the commissioners. That board has no authority to disburse the public moneys, and did not attempt to do so. The situation then was that the company had received moneys of the county, in a way apparently regular, but to which it was not in strict law entitled. But an accounting officer, in form duly approved, and it is difficult to see why in these respects, as to a stranger, they did not represent the county, and why the facts do not present a case

of voluntary payment with the usual legal result that, in the absence of an enabling statute and where there is no showing of fraud or mistake of fact, there can be no recovery back. The rule recognizes the fact that the money paid was unjustly paid; that the claim itself was illegal, one which the party, had he sought to do so, could have resisted. He chose not to resist but to pay, and he can not afterwards ask the law to rectify his mistake. The cases of *Mays* v. *Cincinnati*, 1 Ohio St., 268; *City of Marietta* v. *Slocumb*, 6 Ohio St., 471; *Railway Co.* v. *Iron Co.*, 46 Ohio St., 44, and *Cincinnati* v. *Gas Light Co.*, 53 Ohio St., 278, are cases where the principle was applied to payments by individuals, to payments by private corporations and to payments by municipal corporations. If the rule is correctly held in these cases and the principle on which it is based is sound, and we are not inclined to question either, they seem to settle the rule generally for this state, and no sufficient reason appears why it should not be applied to counties when the facts otherwise require it. The order of the board furnished a sufficient justification for the auditor in drawing his warrants, and on presentation of the warrants to the treasurer the duty devolved upon him to pay. It will tend to a clearer understanding to keep in mind that allowance is not payment. A case in point is that of the *State* v. *Yeatman, supra.* One Bain had a claim against Hamilton county for certain maps made by virtue of a contract with the board of commissioners. It was allowed by the board but the auditor refused to draw a warrant. Bain, in the name of the State, brought mandamus. This court held that "the board of county commissioners can exercise only such powers as are conferred upon them by law," and that the board had no authority to make the contract, and so refused the writ. Had the claim been paid and a suit brought to recover back, a far different question would have been presented. And, in the case at bar, had the prosecuting attorney interposed after allowance and before payment, a far different case would have been made. The payments here challenged might have been prevented by virtue of the statute (Section 1277, Revised Statutes), as then in force, but the statute did not then provide for a recovery back. Later an amendment incorporating such provision was made as hereinafter fully stated. The fact that this amendment was deemed by the General Assembly necessary to authorize recovery back generally of money illegally drawn from the treasury, while not a conclusive

argument in support of the proposition that the section was defective in that respect, yet is not without weight, and, to a certain extent, supports our conclusion.

If the rule of voluntary payment is to have application it disposes of all payments prior to those of the year 1898, for, as before stated, prior to the statute of April 25, 1898, there was no law which as to claims of this character enabled a prosecuting attorney to maintain an action. That act (present Sections 1277 and 1278, Revised Statutes), provides, among other things, that:

"The prosecuting attorneys of the several counties of the state, upon being satisfied that the funds of the county * * * have been misapplied, or that any such public moneys have been illegally drawn out of * * * county treasury, * * * may apply by civil action in the name of the state to a court of competent jurisdiction to * * * recover back for the use of the county all such public moneys so misapplied or so illegally drawn out * * * from the county treasury."

Manifestly it is the purpose of this statute to reimburse the treasury for unauthorized payments from it not otherwise provided for. It is in one sense a remedial statute, and yet it gives a right of action which before its enactment did not exist, and could not, we think, apply to past transactions.

This holding is in no may inconsistent with the judgment in *Jones* v. *Commissioners,* recovery in that case being based upon specific provisions of statutes authorizing such actions against the officers named.

It follows that the judgment below should be modified and the recovery confined to unauthorized payments made after April 25, 1898.

*Judgment accordingly.*