STATE EX REL. M. W. HUNT, PROS. ATTY. V. S. M. FRONIZER ET AL.

1. COUNTY MAY NOT RECOVER BACK MONEY PAID FOR BRIDGE WITHOUT OFFERING TO RETURN BRIDGE WHERE PRACTICABLE.

　　An action, under Rev. Stat. 1277 (Lan. 2655) as amended in 93 O. L. 408, to recover back for the use of the county money paid out for a bridge by the order of the county commissioners, where the bridge has been furnished under a contract void because of the omission of the auditor's certificate required by Rev. Stat. 2834b (Lan. 4286), cannot be maintained without an offer to restore the bridge, where practicable, to the one from whom the money is sought to be recovered, where fraud is not an element of the transaction.

　　[For other cases in point, see 3 Cyc. Dig., "Counties," §§ 516, 517.—Ed.]

2. REVISED STATUTES 1277 (LAN. 2655) AS AMENDED IN 93 O. L. 408 CREATES NO NEW RIGHTS BUT NEW METHOD OF ENFORCING EXISTING RIGHTS.

　　Revised Statutes 1277 (Lan. 2655) as amended in 1898 in 93 O. L. 408, does not create in favor of the public a cause of action theretofore not existing, but, instead, gives the power to a prosecuting attorney or, on his default, to a taxpayer, to institute proceedings to enforce a right of action which, before the amendment referred to could have been enforced only by the board of county commissioners under their general powers. It does not affect any right of action that existed or any valid defense that might have been interposed before its adoption.

　　[For other cases in point, see 3 Cyc. Dig., "Counties," §§ 782-788; 7 Cyc. Dig., "Prosecuting Attorney," §§ 27-32.—Ed.]

Sandusky County.

ERROR to Sandusky common pleas court.

**M. W. Hunt** and **Basil Meek,** for plaintiff in error·

**Hunt & Garn,** for defendants in error.

## PARKER, J.

This case was submitted to Judge Haynes and myself; Judge Wildman, the third member of the court, having passed upon the case in the court of common pleas, and his decision there being under review, did not sit here.

The opinion of Judge Wildman, published in *State* v. *Fronizer,* 15 Dec. 613, is so full and complete in its statement of the facts and issues as to make it unnecessary to restate the same, and for the statement of the case, we refer to that opinion.

The question in this case, is whether or not Rev. Stat. 1277 (Lan. 2655),—1880, as amended in 1898 (93 O. L. 408)—authorizes the recovery back by the prosecuting attorney of money paid on county commissioner bridge contracts, void under Rev. Stat. 2834b (Lan. 4286), for the lack of the county auditor's certificate, as therein required, without an offer to return or surrender to the contractors the structure furnished by them, and accepted by the county commissioners, under such void contract, where such structures are retained by the county and may be returned.

The question arises upon demurrers to certain answers. The negative answer given to this proposition by the court of common pleas resulted in the overruling of the demurrers, and the plaintiff desiring to present that question at once to the higher courts, and not choosing to plead further, judgment was entered in favor of the defendants upon the answers.

The answers admit the allegations of the petition to the effect that the certificate required by Rev. Stat. 2834b (Lan. 4286), had not been furnished, but they set forth that the contracts were entered into in entire good faith and honesty of purpose, and that a failure to procure the certificate and have it filed was a mere inadvertence; that it was not done with any design to violate the law or commit any fraud or wrong. That the property furnished was of value equal to the price charged and paid, and that the property has ever since been retained and used by the county, and is now in the possession of the county; that the county does not purpose or offer to return it, or to allow the bridge company to have it. The contention is thereupon made that the action to recover the price cannot be maintained until the county returns or at least signifies a willingness to surrender possession of the property, so far as that may be

practicable, and whether that is required of the county, is the real question presented.

The court of common pleas was of the opinion that relinquishment of claims to the property is required under the circumstances set forth in the answers, and admitted by the demurrers, and with that conclusion, we are in accord. Very little could be added, we think, to the reasoning in support of that proposition contained in the opinion of Judge Wildman, and in the authorities upon which his conclusion was largely based.

There are some conclusions upon subordinate questions, with respect to which we are not in exact accord with Judge Wildman, or the opinion expressed by Judge Spear, of the Supreme Court, in *Vindicator Ptg. Co. v. State*, 68 Ohio St. 362 [67 N. E. Rep. 733], and we feel disposed to express our own views upon those questions.

Counsel for the plaintiff insist that Rev. Stat. 1277 (Lan. 2655), as amended April 25, 1898, authorizing the prosecuting attorney to institute an action in the name of the state, to recover back, for the use of the county, all public moneys misapplied or illegally drawn out or withheld from the county treasury, or to recover for the benefit of the county, any damages resulting from the execution of illegal contracts, gives to the public, when thus represented by the prosecutor, a new and different cause of action from any theretofore existing in favor of the public.

Counsel for the defendants insist that this statute only confers a power upon the prosecuting attorney to represent the public in the prosecution of actions upon causes of action that are not new and are not created by this statute.

The following section, Rev. Stat. 1278 (Lan. 2656), authorizes like suits to be brought by taxpayers after they have made a request upon the prosecuting attorney to bring the suit, and he has refused or failed to do so.

It has seemed to us that the contention of counsel for the plaintiff is wrong, and that the opposite contention, the view maintained by counsel for defendants, upon this proposition is correct.

It is said by counsel for plaintiff in his brief that the case of *Buchanan Bridge Co.* v. *Campbell*, 60 Ohio St. 406 [54 N. E. Rep. 372], arising upon a contract entered into in 1894, under a law as it was before the amendment of 1898, revealed the lack of the remedy which the plaintiff contends was provided by that amendment, and that the amended law was passed by the legislature for the purpose of providing such remedy. That prior to the amendment, if a suit in injunction was brought in time, the injury was averted, but if the mischief had been accomplished, the public was remediless. That this put a

premium upon successful fraud, and that the purpose of the amend-
ment was to protect the public, and provide a remedy as complete for
the recovery of money actually paid upon an invalid contract as that
existing prior to the amendment to prevent such payment.

Insofar as this amendment of April 25, 1898 (93 O. L. 408), con-
fers the right or power to institute the action upon the prosecuting at-
torney, we think the contention of counsel for plaintiff is correct, but
that there was no cause of action in favor of the county in transactions
of this kind, or no body authorized to institute suits on behalf of the
county in cases like this, before that amendment, we think is not true;
nor do we think that the case of *Buchanan Bridge Co.* v. *Campbell,*
*supra,* disclosed such disability upon the part of the county or was the
moving cause of the amendment referred to. If we have the true
history of the moving cause of this amendment—and we think we have
—it was a desire to have suits instituted by some other authority than
the county commissioners against certain county officers to require
them to convert back into the county treasury, certain funds they were
charged with having illegally drawn as fees and compensation and,
therefore, the power to institute the suits was conferred upon prosecut-
ing attorneys. A case of that character afterwards came before this
court, and we decided that the amendment was ineffectual to accomplish
the object sought, for the reason that the law as amended contains no
provision that it shall reach past transactions, and that holding was
made under Rev. Stat. 79 (Lan. 98), which is a statutory declaration of
the general rule and principle that statutes have a prospective opera-
tion, unless the purpose to have them act retrospectively is made dis-
tinctly manifest.

Before this statute of April 25, 1898 (93 O. L. 408), was passed,
Rev. Stat. 845 (Lan. 2104), provided that,

"The board of county commissioners shall be capable of suing and
being sued, pleading and being impleaded in any court of judicature,
and of bringing, maintaining and defending all suits, either in law or in
equity, involving an injury to any public, state or county road, bridge
or ditch, drain or water course established by such board in [their]
county, and for the prevention of injury to the same; and any such
board of county commissioners shall be liable in [their] official capacity
for any damages received by reason of its negligence or carelessness [of
said commissioners] in keeping any such road or bridge in proper re-
pair; and to ask, demand and receive, by suit or otherwise, any real
estate or interest therein, whether the same is legal or equitable, be-
longing to their county or any sum or sums of money or other property

State v. Fronizer.

due to such county, and the money so recovered in any case shall be [by them] paid into the treasury of the county, and they shall take the treasurer's receipt therefor and file the same with the county auditor."

They were the general financial agents of the county, authorized to bring actions for the protection of its property, or the recovery of money or property belonging to the county.

It was held by the circuit court of Hamilton county, in 1889, in *State* v. *Zumstein,* 2 Circ. Dec. 539 (4 R. 268), and certain other actions all decided and reported at the same time, that,

"Where money is illegally drawn from the county treasury, the prosecuting attorney of the county, in the absence of a statute authorizing him to do so, cannot bring an action in the name of the state, for the use of such county, and recover a judgment therefor. Section 1277 (Lan. 2655) Rev. Stat., only authorizes him to sue in such manner [as] to restrain a threatened misapplication of the funds of the county, or the completion or execution of a contract in contravention of the law of the state, or which was procured by fraud or corruption; and no other statute authorizes him to bring an action in cases like these."

And that seems to have been the law with reference to the power of prosecuting attorneys in the premises up to the time of this amendment of Rev. Stat. 1277 (Lan. 2655).

That case was affirmed by the Supreme Court, and that case, we believe, is the one which disclosed the ability of prosecuting attorneys to maintain actions of this kind. But the court added, and it appears as part of the syllabus, that,

"That duty (the duty to institute such actions) is imposed upon the county commissioners as the financial representatives of the county."

In the case of *Jones* v. *Lucas Co. (Comrs.)* 57 Ohio St. 189 [48 N. E. Rep. 882; 63 Am. St. Rep. 710], with other cases decided at the same time, the question of the right or power of the commissioners to institute an action of that character (that particular case being an action to recover back from the auditor fees which it was charged he had illegally drawn) it seemed to counsel was involved, and so it was discussed, but the Supreme Court did not find itself obliged to pass upon it for the reasons stated in the opinion by Judge Spear. I quote from page 209:

"A question much argued, whether or not there can be a recovery back by the commissioners, we think does not arise upon the record in this case, because of the agreement of the parties embodied in the sub-

Sandusky County.

mission, that if the allowance is found not to be regular and proper under the law, judgment is to go against the defendant."

But by the court of common pleas and the circuit court of this circuit, it had been determined in that case that such action might be maintained by the county commissioners.

We are not sure that the question has been passed upon distinctly by the Supreme Court, but we are confident that the decision of this court in the case of *Jones* v. *Lucas Co.* (*Comrs.*) *supra,* and the decision of the circuit court, of Hamilton county in the case to which I have referred, were correct upon that point.

In *Buchanan Bridge Co.* v. *Campbell, supra,* it does not seem to me that any disability operating to the disadvantage of the county, was disclosed. Nothing of that kind appears to have been commented upon or mentioned. In that case, the county had received the bridge and continued to keep it, notwithstanding the fact that it had not paid for it. Whether it had a right to keep the bridge, whether it might keep it, in spite of the bridge company, without paying for it, was a question not mooted; at least, not presented to the court for its consideration or decision and not decided.

At the very close of the opinion by Judge Burkett, this remark is made:

"In this case both parties have acted in disregard of the statute, and the court will leave them where they have placed themselves, and refuse to aid either."

And in argument here, a great deal seems to be made of that expression by Judge Burkett. That was an action upon contract. The bridge company, having failed to receive pay for the bridge, and it having been determined it could not enforce the express contract, was seeking to recover upon a *quantum valebant,* upon an implied promise to pay so much as the bridge was worth; and it is with respect to that state of facts and with respect to the attitude of the parties there—their effort to undertake to enforce contractual rights growing out of the transaction—that we understand Judge Burkett to be speaking; and of course he there states the general rule and principle that where a contract is void, in any efforts the parties may make to enforce contractual rights the court will not aid them, but it will leave them where they have placed themselves. But it does not follow that there may not be rights arising out of the transaction—rights for the enforcement of which the law affords a remedy—and where a remedy like that pursued in this case is given it does not follow that it is enforcible unconditionally.

It was certainly not very severe upon the county in that instance for the court to pronounce that it would leave the parties where it found them, for the reason, as I have said, the county had both the bridge and the money. But we do not understand that as meaning that if the county had paid out the money either upon receiving the bridge, or without having received it, the county would be without remedy to recover the money. We have no doubt that the county had such a remedy in such a case, and that not by virtue of the amendment of Rev. Stat. 1277 (Lan. 2655), but by virtue of the general principles of law, to be enforced by the commissioners under Rev. Stat. 845 (Lan. 2104). But because there were many transactions arising in which the commissioners were purchasers, and the public was not likely to be protected by the institution by the commissioners of actions that must impeach their own conduct, it was well and wise to enact this amendment of Rev. Stat. 1277 (Lan. 2655), placing the authority to bring such actions in another public officer, or if he failed, then in a taxpaying citizen.

In the course of his opinion, to which I have already referred, Judge Wildman says as follows:

"Until the amendatory statute of 1898, a county whose officials paid out funds in fulfillment of invalid contracts, had no recourse on the recipient. This principle, recognized in the *Buchanan Bridge Co.* v. *Campbell, supra,* subjected an innocent public to loss because of the voluntary, but unauthorized, acts of its agents. To cure the manifest injustice of the principle, a new remedy was given to the public by the amendment. An action was provided for the recovery of the money and its restoration to the public fund. The reason for the amendment is manifest. The agents of the county exceeded their authority, and although they acted voluntarily, the county did not voluntarily part with its money. The voluntary acts of the officials were not the voluntary acts of the public."

Therein it will be observed his views are in harmony with those expressed by counsel for plaintiff in error.

In the case of *Vindicator Ptg. Co.* v. *State,* 68 Ohio St. 362 [67 N. E. Rep. 733], Judge Spear says of this amendment, pages 372-373:

"Manifestly it is the purpose of this statute to reimburse the treasury for unauthorized payments from it not otherwise provided for. It is in one sense a remedial statute, and yet it gives a right of action which before its enactment did not exist, and could not, we think, apply to past transactions."

Sandusky County.

Judge Spear appears to deduce therefrom that this statute authorizes the recovery back of the money notwithstanding it may have been voluntarily paid. That cuts off the possible defense of voluntary payment. The court had already, in *Jones* v. *Lucas Co. (Comrs.)* *supra*, determined that the defense of *res judicata* could not be interposed in a suit by the commissioners though they had allowed the claim, where the claim was wholly illegal. That principle has been reaffirmed in a number of cases since, including *Vindicator Ptg. Co.* v. *State*, *supra*, and we think that for substantially the same reasons the defense of voluntary payment could not have been interposed successfully against a claim asserted by the county commissioners or the prosecuting attorney on behalf of the county or public, for funds illegally paid out by county officers, and that it was not necessary to invoke the amendment of Rev. Stat. 1277 (Lan. 2655), or to construe it as modifying rights of action, in order to determine that question against the printing company.

If an auditor, without authority of law, should draw a warrant in his own favor, or in favor of another, and the treasurer should pay that warrant, and an action were brought to recover back the money from the recipient, could the recipient ever have interposed the defense that the money thus paid to him without authority of law, was voluntarily paid, and that, therefore, it could not be recovered back? We have not made a study of, or search for, authorities upon this proposition, but it seems to us so apparent that that defense could not be interposed under such circumstances, that we have not deemed it necessary to find authorities. We do not understand that public officers can make a raid upon the public funds and pay them out illegally and that the persons receiving the funds can, in an action to recover them back, defend upon the theory that because the officers have acted voluntarily in an effort to rob the public they have bound the public under some doctrine of estoppel, or voluntary payment. The cases cited in the opinion in *Vindicator Ptg. Co.* v. *State*, *supra*, as supporting the doctrine of voluntary payment in the case of payment of public funds by public officers do not any of them seem to us to support such defense where the payment is upon a claim or demand wholly illegal.

In the case of *Vindicator Ptg. Co.* v. *State*, *supra*, the public could not recover back on account of the bills for printing paid before the amendment, for the reason that the statute giving authority to the prosecuting attorney to pursue this remedy, does not relate to past transactions; but it seems to us, that if the action had been prosecuted by the board of county commissioners instead of the prosecuting at-

torney, the plaintiff would have met with no such difficulty as to past transactions.

According to our view, Rev. Stat. 1277 (Lan. 2655), both as it stood before the amendment and as it stands now and amended, is not a statute defining rights or giving causes of action, but it is a statute conferring powers to pursue causes of action by appropriate suit or action, in some instances by bills in equity, and by injunction, and in other cases, where it would be appropriate "by civil action in the name of the state."

We do not understand that this statute so operates upon causes of action as to change their nature; or that it so operates upon them as to remove any infirmities or conditions that may attach to them, or so as to remove any defenses that might be interposed to them. In cases like this, as I have intimated, we think it is well settled that the defense of *res judicata* and the defense of voluntary payment may not be interposed, but if the case were such before this amendment as that the plea of *res judicata,* or voluntary payment might be successfully interposed; then we suppose that such right of defense is not taken away or destroyed by the amendment. If the defense of the statute of limitations were interposed, would it be argued, could it be said, that because this statute authorizes the prosecuting attorney to bring an action to recover the money back, that cuts off the defense of the statute of limitations? that by virtue of the statute he must recover it back? that it determines in the first instance what the result of the action must be? that it so operates upon the cause of action as to deprive the defendant of defenses that he might otherwise have to it? We think not. The statute does not say expressly, and we think it is not intended to imply, that the usual legal and equitable incidents of the transaction affecting the rights of the person asserting the claim, or the rights of persons defending against the claim shall be altered by the statute. It simply says the claim, whatever it may be, may be prosecuted in the name of the public, and for the benefit of the public by the prosecuting attorney, or if not by him, by a taxpayer.

In the expression of these views, we appreciate the fact that we are differing somewhat from judges of recognized ability and reputation, for whose views, we have the greatest respect; but it appears to us that in thus expressing such views in deciding the points decided in the cases, they went beyond what was necessary to the decisions, and after due consideration such views seem to us to be erroneous.

What the further results may be, if it shall be disclosed that the county may not be able or willing to make restitution or relinquish all

claim to the property, we do not now attempt to say or forecast. We·
leave that for future development. We do say, that it appearing
that the county has not shown a willingness or disposition to return
or relinquish its claims to the property, and no disability to do so being
apparent, that in our opinion discloses a defensive position; that while
this is not precisely an action for the rescission of the contract, it is of
that nature; it is an action for the rescission or undoing, so far as
possible, of transactions which were initiated by a contract, and which
grew out of a contract. The contract itself is void. No contractual
rights arose out of it, and there are no contractual rights to be enforced.
But the fact remains that a bridge has been obtained by the county,
and that payment for the bridge has been made and that both parties
to the transaction acted in good faith, and the county suffered no actual
loss; and that because of the illegality of the transaction the public,
through the prosecuting attorney, is authorized to sue to recover the
money paid.

The bridge appears to be in the possession and use of the county,
and we think the county, before it should be permitted to recover the
whole amount, (and that is what it seeks to recover,) should at least
evince a willingness to relinquish any claim to the bridge.

As I have already said, the facts as pleaded and confessed by the
demurrer, show good faith in the transaction, and that the failure to·
furnish this certificate was a mere inadvertence. If there were fraud
in the transaction, the rights of the parties might be somewhat different
upon a question of rescission, but can it be said that because of Rev. Stat.
2834b (Lan. 4286), which requires the certificate for the evident pur-
pose of preventing public authorities from entering into contracts
which may require the payment of money, unless the money is on hand
to make the payment—preventing them from going in debt—can it be said
that in all instances, no matter what the circumstances, if this certificate
is not placed on file, the contract is so utterly void that no rights or liabili-
ties can grow out of the transactions? We think that is not true, even
though contractual rights may be vitiated and extinguished. We can
imagine a case where a fraud might be perpetrated upon a person selling
a bridge to the county, a bridge company if you please, by a representa-
tion that the certificate was on file, by an exhibition of something which
purported to be a genuine certificate, but which was not—where as a
matter of fact, the certificate required by law, was not on file. Will it
be said that in a case of that kind, where the county had obtained the·
property, it might retain it without paying for it?

A ·certificate might be placed on file, but one so defective in char-

State v. Fronizer.

acter that it would not come up to the requirements of the statute, and yet the parties might proceed in good faith, supposing it to be a good and sufficient certificate. If it should turn out that it was not, would it be said that this statute is so drastic that the result would be that the county could keep the property, without paying for it?

It is to be remembered that statutes are not to be construed as imposing penalties or forfeitures unless that purpose is so clear and manifest that the conclusion that such was the purpose cannot be escaped; and here we find nothing in the statute indicating a purpose to impose a penalty or a forfeiture, but the purpose, so far as we can gather it from the statute, is only to save the county or the public from wrong or imposition or loss, and where the contract is repudiated and there is no fraud in the transaction and there is an effort to place the parties in *statu quo*, as nearly as possible, we think that effort should be forwarded by the courts.

The judgment of the court of common pleas will be affirmed:

**WILDMAN, J.**

While sitting as a judge in the common pleas court, I passed upon the demurrer just considered by Judge Parker, and for that reason have taken no part in the review of the case by the circuit court.

While the opportunity offers, however, I wish to place myself in accord with my associates upon the circuit bench, and with what I believe to be a correct interpretation of the law, by assenting to the criticism which has been made upon certain expressions in the opinion rendered by me in the court below.

I refer to the expressions following the dicta of one of the judges of the Supreme Court in the interpretation of the statutes in force at the time of the decision of *Vindicator Ptg. Co.* v. *State, supra,* and indicating that a county at that time had no cause of action to recover through its officials, money which had been paid as the price of bridges, under invalid contracts.

My present judgment is, that the county had such cause of action, even prior to the enactment of the amendment of 1898 (93 O. L. 408), and that the amendment was a designation of an official who might institute the suit in behalf of the county. Before that time, the power to protect the interests of the county so far as suing to recover moneys unlawfully paid out, was concerned, resided under the general statutes, in the county commissioners. By reason of possible complicity of county commissioners in the making of illegal and invalid contracts, the legislature by this amendment gave to another public officer, the power to

Sandusky County.

represent the county in the protecting of its interests. Provision had already been made that the prosecuting attorney might by proper suits prevent the carrying out of unlawful contracts, but there was no provision that the prosecuting attorney could so represent the county in the recovery of money which had been illegally paid from its treasury.

In order further to protect the interests of the public the amendment of 1898 empowers any taxpayer to represent the county in case the prosecutor refuses to act as such representative. By these enactments the law clothes either the prosecuting attorney or the taxpayer with a certain representative capacity to act for the county, not only in the endeavor to bring back to the treasury the funds which have been unlawfully taken therefrom, but also in making such proffer for the county as the county should justly make as a condition precedent to obtaining redress of the wrong which has been committed against the public.

It is because of the fact that the opinion which I announced from the common pleas bench has gone into one of the published journals, and because the decision which has been rendered by the circuit court at the present hearing is very likely to be reported, that I have thought best to make these statements in order to harmonize any apparent difference between the opinion entertained by my associates and my own.